UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HARTFORD ACCIDENT &
INDEMNITY COMPANY, *et al.*,

        Plaintiffs,

v.

        Case No.: 18-13579
        Honorable Gershwin A. Drain

GREATER LAKES AMBULATORY
SURGICAL CENTER LLC,

        Defendant.
_____/

## OPINION AND ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT [#14]

### I. INTRODUCTION

Plaintiffs Hartford Accident & Indemnity Company, Property & Casualty Ins. Company of Hartford, Trumbull Insurance Company, and Twin City Fire Insurance Company (collectively "Hartford") brought the instant action against Defendant Greater Lakes Ambulatory Surgical Center ("GLASC") alleging that Defendant submitted fraudulent bills to Hartford on behalf of Hartford's insureds.

Now before the Court is the Plaintiffs' Motion for Summary Judgment, filed on March 19, 2020. Defendant filed a Response on April 9, 2020. Plaintiffs filed their Reply on April 23, 2020. This matter was reassigned to the undersigned on

April 22, 2022. Upon review of the parties' submissions, the Court concludes oral argument will not aid in the disposition of this matter. Accordingly, the Court will resolve the present motion on the briefs and will cancel the January 30, 2023 hearing. *See* E.D. Mich. L.R. 7.1(f)(2). For the reasons that follow, the Court grants Plaintiffs' Motion for Summary Judgment and enters judgment in favor of the Plaintiffs in the amount of $652,557.00.

## II. FACTUAL BACKGROUND

Plaintiffs are corporations who provide No-Fault insurance policies to persons who purchase policies through Hartford. Defendant is an ambulatory surgical center that provides treatment to patients who have Michigan No-Fault insurance with Plaintiffs and who have been injured in an automobile accident. At issue in this case is the Defendant's billing for its Pulse Stimulated Treatment, or P-Stim treatment. P-Stim is a small, discrete device that is applied to a patient's ear. ECF No. 14, PageID.153. P-Stim provides a steady current of low frequency electrical impulses to specific, targeted nerve endings located in the outer ear to relieve specific types of pain. *Id.* GLASC's corporate representative, Mr. Al-Hilali, testified that the P-Stim device can be installed in 15 minutes or less. No anesthesia or surgery is required for the procedure.

The American Medical Association develops Current Procedural Terminology (CPT) or Healthcare Common Procedure Coding System (HCPCS)

codes that providers use when billing insurers such as Plaintiff.  Insurers use the codes to determine what services were provided and the amount of reimbursement that a healthcare provider will receive for those services.  Plaintiffs pay medical bills based upon the CPT and HCPCS codes and the zip code in which the service was rendered.

From September 2013 through February of 2017, GLASC billed Hartford for P-Stim using the following CPT codes:

> CPT   63650:  percutaneous implantation of neurostimulator electrode array, epidural.
> CPT  64555:  Laminectomy for implantation of neurostimulator.
> CPT  95972:  Electronic analysis of implanted neurostimulator pulse generator/transmitter with complex spinal cord or peripheral nerve neurostimulator by physician or other qualified health care professional.
> CPT  95971:  Electronic analysis of implanted neurostimulator pulse generator/transmitter with simple spinal cord or peripheral nerve neurostimulator pulse generator/transmitter programming by physician or other qualified health professional.
> HCPCS: L8680:  Implantable neurostimulator; pulse generator, any type.

Mr. Al-Hilali testified that it used these codes because the manufacturer of the P-Stim device informed GLSAC those were the proper codes.  However, a review of these billing codes used for 20 Hartford insureds shows that CPT 63650 is used for implantation of a neurostimulator at the spinal cord, and CPT 64555 relates to injections, anesthetic agent and/or steroid, plantar common digital nerves.  Both codes are found in the Surgery-Nervous system section of the CPT manual.

The correct code for the P-Stim procedure is S8930. ECF No.14, PageID.153. The medical chart of each patient that had the P-Stim procedure preformed at GLASC describes the procedure as detailed in HCPCS Code S8930. For example, patient AP's medical notes drafted by Muhammad Awaisi MD described the procedure as:

> [T]heir head was rotated and the ear was prepped and draped in a usual sterile fashion. The P-Stim stylet was used to find three points of maximal pain, these points were then marked out. The P Stim battery was then ready and the leads tested. The leads were then attached to the P Stim pins. The pins were inserted along the previous marked sites. The battery and generator were then affixed to the left mastoid process.

ECF 14, PageID.155. Thus, the codes used to bill Plaintiff did not accurately describe the P Stim procedure. Moreover, the P-Stim procedure notes are identical from patient to patient. *Id.* at PageID.156. The example used for patient AP's medical notes contains the exact verbiage for the other patient notes. *Id.* Mr. Al-Hilali admitted during his deposition that P-Stim is not a surgical procedure, does not require anesthesia, and is affixed to the back of a patient's ear. The code that was billed for patient AB described a procedure where a catheter electrode array is implanted in the epidural space in the vertebrae.

Moreover, according to Plaintiffs' expert, Jacqueline Bloink, MBA, RHIA, CFE, CHC, CPC-1, CPC, CMRS, the information on how to bill P Stim procedures was widely available to healthcare providers as early as 2013. Specifically, a

simple Google search would have allowed GLASC to find the following information concerning billing for the P-Stim procedure: *Capital Blue* (6/1/13), *Anesthesiology/Pain Management* (8/19/13), *Becker's Review-Surgery Center* (ASC) 5/7/2012, American Academy of Professional Coders (6/24/13), *Auricular Electrostimulation Technology Assessment Committee and Medical Policy Committee* (8/16. 10/17, 8/18, 8/19, 9/19), *Find A Code* 4/2012-2019). Additionally, YouTube published videos on the P Stim Procedure showing the procedure being performed in an office, and not in a surgical center.

      Mr. Al-Hilali testified that GLASC's medical coder and billing managers were responsible to research and choose the right medical codes. GLASC also failed to perform internal coding audits which would have assisted GLASC to detect the improper coding of the P Stim procedure. According to Ms. Bloink, it is grossly negligent and improper for a medical provider to accept the billing and coding advice of a sales representative of a medical device manufacturer. ECF No. 14, PageID.165. Ms. Blonik further opines that the usual, customary and reasonable amount per the Michigan Insurance Act 218 of 1956 would have ranged from $128 – $145 in the 75th percentile – where 25% of other providers charged more than this range. *Id*. at PageID.164. The 75th percentile is what healthcare payers use as an Out of Network amount to pay if a beneficiary receives services from a provider that is Out of Network. *Id*. The 95th percentile was $508.00. *Id*.

Ms. Bloink opines that had GLASC used the proper code of S8930, Plaintiffs would have been billed $6,400.00 or $128 per procedure, rather than the $658,957.00 it paid to GLASC. This represents an overpayment of $652,557.00. GLASC has not come forward with any expert testimony contradicting the opinions of Ms. Bloink.

## III. LAW & ANALYSIS

### A. Standard of Review

Federal Rule of Civil Procedure 56(a) "directs that summary judgment shall be granted if there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Cehrs v. Ne. Ohio Alzheimer's Research Ctr.*, 155 F.3d 775, 779 (6th Cir. 1998) (quotations omitted). The court must view the facts, and draw reasonable inferences from those facts, in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). No genuine dispute of material fact exists where the record "taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus., Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Ultimately, the court evaluates "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52, 106 S.Ct. 2505.

B. **Plaintiffs' Motion for Summary Judgment**

**1. Fraud**

To establish their fraud claim, Plaintiffs must demonstrate "(1) [t]hat defendant made a material misrepresentation; (2) that it was false; (3) that when he made it he knew that it was false, or made it recklessly, without any knowledge of its truth, and as a positive assertion; (4) that he made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that he thereby suffered injury." *Talton v. BAC Home Loans Servicing LP*, 839 F. Supp.2d 896, 913 (E.D. Mich. 2012) (quoting *Hi-Way Motor Co. v. Int'l Harvester Co.*, 398 Mich. 330, 336; 247 N.W.2d 813 (1976)).

In GLASC's response, it asserts a genuine issue of material fact exists as to whether Defendant knew that its coding of the P Stim procedure was false or made it recklessly without any knowledge of its truth. GLASC does not challenge Plaintiffs' ability to demonstrate the remaining elements of their fraud claim.

**a) Material Misrepresentation**

The CPT codes are used by health care providers and insurers to describe the procedures and services performed by the providers. The dollar amount for the service provided is linked to the CPT code. Insurers such as Plaintiff rely on providers to use the billing code that most accurately reflects the service provided. Here, the codes billed by the Defendant–CPT 63650 and CPT 64555–describe a

7

procedure where a catheter electrode array is implanted in the epidural space in the vertebrae. Defendants do not dispute that the CPT codes are material misrepresentations. This element of Plaintiffs' fraud claim is established.

### b) False

Defendant also does not contest that the CPT Codes it used to bill for the P-Stim procedure were false. The evidence of record reveals that the P-Stim procedure is not a surgery and does not require anesthesia. The evidence further shows that the device is placed behind a patient's ear. But the codes used by Defendant were for a surgery involving implantation of a device in the spinal cord. The codes Defendant used did not accurately reflect the P-Stim procedure. Plaintiffs have also established this element of their fraud claim.

### c) Knowledge or Recklessness

Plaintiffs assert that Defendant knew the CPT codes it used were improper because the codes it billed did not match the patient medical records and the procedure notes from the doctor. Additionally, literature on the proper way to bill for the P-Stim procedure was widely available. Mr. Al-Hilali testified that the representative for the P-Stim device gave GLASC the CPT code to use. However, Mr. Al-Hilali admitted that he does not know whether the codes used by GLASC accurately describe the P-Stim procedure. ECF No. 16, PageID.235. Plaintiffs also point to the expert opinion of Ms. Bloink, who has opined that, "[i]t is grossly

negligent and improper for a medical provider to accept the billing and coding advice of the sale representative of a medical device such as the P Stim device." ECF No. 14, PageID.165.  She further noted that "[a] biller/coder for a healthcare provider has an independent duty to verify this information and make its own determination as to the proper billing and coding for the medical procedure being performed." *Id.*

Conversely, Defendant maintains Plaintiffs cannot establish that it knew the CPT codes it billed were false, or that it acted recklessly in billing Plaintiffs with the false codes.  Defendant asserts that the CPT codes it billed to Plaintiffs is "the accepted industry standard for coding and billing P-Stim Procedures."  ECF No. 16, PageID.190.  Yet, Defendant failed to cite to any evidence in support of this assertion.  Defendant also maintains that "there was online debate as to the CPT codes, signifying industry-wide confusion as how to properly bill the procedure." *Id.*, PageID.192-193.  However, in support of this assertion, Defendant cites to Mr. Al-Hilali's deposition testimony.  The Court has reviewed this testimony, and there is nothing in the record demonstrating industry-wide confusion as to how to properly bill the procedure as claimed by Defendant.  The sole evidentiary support given is Mr. Al-Hilali's testimony that one of his billing managers researched the nature of the code after a sales representative had told GLASC to use the erroneous codes.  The medical notes for the 20 patients who received the P-Stim Procedure at

9

GLASC all explicitly demonstrate that Defendant was billing for procedures it never performed. An internal audit of its coding records would have revealed the mismatch between the medical notes and the codes used to bill for the treatment. Additionally, Defendant failed to offer any expert testimony demonstrating that its use of CPT Codes 63650 and 64555 to bill Plaintiffs for the P-Stim procedure was reasonable considering the abundance of information available to all coders and billers during the time GLASC was submitting bills for the P-Stim procedure explaining how to correctly code and bill for the procedure.

 Defendant has not met its burden to show there is a genuine issue of material fact as to whether Defendant acted recklessly in using CPT codes that overbilled the Plaintiff in the amount of $652,557.00. A review of the doctor's notes on the P Stim procedure reveal that billing for the implantation of a catheter electrode in the epidural space in the vertebrae does not match the actual P Stim procedure. It was reckless to utilize surgical CPT codes for a procedure that does not require surgery or anesthesia. Defendant's sole evidence that it did not act recklessly is the testimony of Mr. Al-Hilali who admits the sales representative told GLASC employees to use the codes. Mr. Al-Hilali claimed during his deposition that at least one of his employees researched what code should be used for the P Stim procedure but does not offer any evidence that this research supported using the CPT codes utilized by Defendant. Moreover, GLASC failed to perform internal

coding audits which would have assisted GLASC to detect the improper coding of the P Stim procedure. The evidence of record shows Defendant acted with a reckless disregard for the truth in choosing codes that did not represent the procedure performed. Plaintiffs have proven this element of their fraud claim.

### d) Intent and Reliance

GLASC also does not dispute that it used the CPT codes for the P-Stim procedure with the intent that Plaintiffs would rely on the codes to determine the amount to pay for the service provided. The evidence of record supports that Plaintiffs relied on the codes provided by GLASC and paid their insureds' medical bills based on the codes supplied by GLASC. This element is satisfied.

### e) Injury

Finally, it is undisputed that Plaintiffs suffered injury. Had GLASC properly billed for the P-Stim procedure, Plaintiff would not have overpaid Defendant for these procedures. Plaintiffs have been injured in the amount of $652,557.00.

### 2. Unjust Enrichment

To prove their unjust enrichment claim, Plaintiffs must show: (1) the receipt of a benefit by the defendant from plaintiff; and (2) an inequity resulting to the plaintiff because of the retention of the benefit by defendant. *See Belle Isle Grill*

*Corp, v. Detroit*, 256 Mich. App. 463; 666 N.W.2d 271, 280 (Mich. Ct. App. 2003).

Here, Defendant received $652,557.00 from Plaintiffs for surgical treatments it did not provide to Plaintiffs' insureds. Defendant submitted bills representing surgeries and implantation of devices in patients' vertebrae when that did not happen. Instead, a fifteen-minute procedure involving the placement of a device to the back of a patient's ear was performed. Ms. Bloink opines that had GLASC used the proper code of S8930, Plaintiffs would have been billed $6,400.00 or $128 per procedure, rather than the $658,957.00 it paid to GLASC. This represents an overpayment of $652,557.00. GLASC has not come forward with any expert testimony contradicting the opinions of Ms. Bloink.

Had Defendant used the CPT code commensurate with the P-Stim procedure, Defendant would have only been owed $6,400.00 for the twenty insureds' bills, or $128 per procedure, rather than the more than $14,000.00 it billed for each procedure. Defendant's retention of these monies is inequitable. Defendant received hundreds of thousands of dollars in payments for surgeries and implantations of devices in patient's vertebrae even though these treatments were never provided. Defendant's sole argument opposing summary judgment on this claim is because "no fraud is established, Plaintiffs' claims for unjust enrichment must likewise be denied" with no supporting authority. Because it is

unconscionable for Defendant to retain monies for treatments it did not actually provide, Plaintiffs are entitled to judgment in their favor on their unjust enrichment claim.

## IV. CONCLUSION

Accordingly, for the reasons articulated above, Plaintiffs' Motion for Summary Judgment [#14] is GRANTED.

SO ORDERED.

Dated: January 27, 2023                           /s/Gershwin A. Drain
                                                  GERSHWIN A. DRAIN
                                                  United States District Judge


CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
January 27, 2023, by electronic and/or ordinary mail.
/s/ Teresa McGovern
Deputy Clerk

13